[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of summons and complaint dated January 20, 1999 and returnable February 23, 1999, in which complaint the plaintiff petitioner in the prayer for relief asked for a dissolution of the marriage, alimony, custody of the minor child, support for the minor child, counsel fees, an equitable division of all real and personal property and any other remedy which in law or equity may appertain.
Accompanying the complaint was a motion for alimony pendente lite, motion for an order regarding custody of minor child, pendente lite, motion for child support and a motion for allocation of debts.
On March 29, 1999 the court, Mihalakos, J., entered an order of pendente lite child support in the amount of $125.00 a week and pendente lite alimony in the amount of $100.00 a week. The court at that time gave joint custody of the minor child, Jennifer, to the parties, joint physical custody, noted, an arrearage of $450.00, the same to be paid off at the rate of $50.00 a week. The usual notice to all parties accompanied the complaint.
The defendant appeared by counsel on February 12, 1999.
On February 10, 1999 the plaintiff filed a motion to appoint an attorney for the minor child pendente lite. It does not appear that this motion was acted upon.
On March 3, 1999 the defendant filed a motion for conciliation which was granted by the court on March 4, 1999. CT Page 6586
Financial affidavits were filed by the parties with the court on March 29, 1999.
The record reflects that on May 12, 1999 that the plaintiff petitioner had satisfactorily completed the Parenting Program.
On June 22, 1999 the plaintiff filed a motion to extend a restraining order which was granted by the court, Solomon, J., on July 6, 1999.
On June 24, 1999 the file contains a form indicating that the defendant satisfactorily completed the Parenting Education Program.
On August 2, 1999 the court, Mihalakos, J., entered an order requiring the defendant to pay the support order via an immediate wage garnishment.
On January 6, 2000 the plaintiff filed a further motion for a restraining order.
On January 18, 2000 a stipulation was filed with the court as concerns arrangements with regard to visitation as to the minor child.
On February 1, 2000 and on May 8, 2000 the plaintiff filed motions to modify, alimony pendente lite and in due course in accordance with an agreement filed with the court dated June 19, 2000 and approved by the court, Dyer, J., an agreement was reached indicating that the court order of child support would terminate on June 20, 2000 on the child's graduation from high school and that thereafter the defendant shall pay alimony at the rate of $160.00 per week effective immediately by wage garnishment.
Financial affidavits were filed by the parties at the time of that agreement and stipulation.
On March 26, 2001 a stipulation was filed with the court pursuant to which the defendant was to cooperate with the plaintiff's appraiser as to the former residence of the parties located at 40 Twin Lakes Drive in Waterford.
On April 10, 11 and 12, 2001 the plaintiff and the defendant with their respective attorneys and with their witnesses appeared before the court and the matter was heard to a conclusion.
The court makes the following findings of fact:
CT Page 6587
The plaintiff's maiden name was Salz. The plaintiff and the defendant were joined in marriage on April 18, 1971 in Tarrytown, New York.
Each of the parties have resided within the confines of this state for at least 12 months next preceding the date of the filing of the complaint.
The marriage between the parties has irretrievably broken down with no reasonable prospect for reconciliation.
There are at this time no minor children issue of this marriage. At the time of the initiation of the complaint dated January 20, 1999 there was recited in the complaint the name and the date of birth of one child who at that time had not yet attained her majority or completed high school.
No other child or children other than the child Jennifer Lynn Zysk noted in the complaint have been born to the plaintiff wife.
Neither party has been the recipient of welfare from the State of Connecticut or any town, city, municipality or subdivision thereof
The court has jurisdiction.
The plaintiff at the outset of her testimony indicated that she was desirous of having the court restore to her, her maiden name of Salz.
The plaintiff testified that her date of birth was December 6, 1948 and that she was age 52.
The plaintiff indicated that she presently had no family in this geographical area; that her father was deceased and that her mother now resided in Florida.
The plaintiff characterized her health as "presently exhausted".
The plaintiff incident to her testimony claimed that the defendant during the pendency of the proceedings had stalked her and wiretapped her means of communication.
The plaintiff claimed that the defendant had been guilty of cruel behavior to her. This is a marriage of 30 years. The plaintiff's education consisted of attending high school from which she graduated in 1966 in Yonkers, New York. She subsequently attended a secretarial school.
The plaintiff was age 19 when the parties first met and they were CT Page 6588 joined in marriage 2-1/2 years after that first meeting.
The plaintiff is of one religion and the defendant is of another.
At the time of the marriage, the plaintiff was employed in secretarial work and she was employed in New York City on a full-time basis at Alcoa. The parties after marriage moved to New Jersey. This was a long commute for the plaintiff and in due course she gave up the job in New York City.
The defendant has a bachelor of arts degree in electrical engineering from Manhattan College in the Bronx.
In the first two years of the marriage, the plaintiff and the defendant moved to different locations five times.
The defendant is age 52. Incident to their various moves they at one time lived in Rockville Center in New York, in Newington, Connecticut, in East Lyme, Connecticut and Waterford, Connecticut. The residencies in part were attributable to the defendant working at the Millstone Nuclear Power Plant.
The plaintiff indicated that she never really wanted to live in Connecticut; however, after coming to Connecticut the plaintiff did part-time work for an entity known as Power Temps doing secretarial work. The parties apparently had few assets when they were first married and were not favored with any inheritances.
The various moves were dictated by the nature of the defendant's employment.
When the plaintiff worked, it was her testimony that she was responsible for her own personal expenses. The parties did have a joint savings account. The defendant wrote out the checks. According to the plaintiff's testimony the defendant controlled the expenditures and the method of payment.
In 1982 a child was adopted. This is the child Jennifer Lynn who is now over the age of 18 and has attained her majority.
It was only at a later point in the marriage that the plaintiff was able to have or maintain her own credit cards.
In 1995 the plaintiff started full-time employment.
In 1996 the plaintiff represents the defendant told her that he would CT Page 6589 no longer pay for her car payments or allied expenses and as a result of that the plaintiff's testimony was to the effect that her mother commenced giving her one-half of the plaintiff's monthly car payment; to wit, one-half of $150.00. The plaintiff provided the other one-half.
The child Jennifer Lynn is now age 19.
The plaintiff's position was that the defendant was always in control of the finances.
There had been a joint account at Liberty Bank which has now been closed.
The plaintiff apparently paid for her clothing, dues to the Temple, personal needs, gifts and matters of like nature. Eventually, apparently as matters deteriorated, the defendant shopped for himself and for the then minor daughter Jennifer.
Prior to her present position the plaintiff had a position at the Center for Physical Therapy; this in 1996, located in Groton. That work began initially part time.
In 1998 the plaintiff went to the Stonington Institute as a billing associate and has remained there to this date.
The plaintiff indicated that her mother is still assisting her with regard to the car payments.
Joint income tax returns were filed by the parties until 1995.
In due course the defendant lost his position at Northeast Utilities and was separated therefrom apparently on the basis of a lessening of staff or matters of like nature. When that occurred, the parties filed separate income tax returns and apparently that has continued to the present time.
The plaintiff, according to her testimony, has not seen the defendant's separate income tax return since 1995.
Insofar as the division of labor in the home was concerned, the plaintiff was responsible for maintaining the inside of the home in a neat and orderly fashion, cooking, cleaning and laundry. Work on the grounds of the yard was apportioned between the parties.
Eventually, the parties by virtue of their estrangement, did not join each other in meals. CT Page 6590
The plaintiff claimed that the defendant dictated what type of an automobile she would be entitled to have.
After his being laid off from Northeast Utilities, there was a period of 13 months during which the defendant was not employed. At that time there was a role reversal and the defendant looked after most everything in the home. The plaintiff arranged for matters pertaining to the then minor child. After the adoption in 1982 the plaintiff remained at home for one year. This apparently in keeping with the terms and conditions of the adoption.
At the present time the defendant resides in the Waterford home which was purchased in 1982 for $142,000.00. The plaintiff testified that she used her savings account that was in existence at that time in helping to purchase the home prior to the home that was had in Waterford although the amount of the contribution was not indicated.
On January 22, 1999 the plaintiff left the marital home. Subsequently an appraisal was done as to the home and residence of the parties. There were apparently two appraisals; the first one costing $360.00; the second one, $240.00. Title to the home and residence of the parties stands in the joint names.
At the time that she left, the plaintiff testified that she did not tell the defendant of her intention to leave indicating that she was fearful. The plaintiff took only a few items at the time that she vacated. The plaintiff's mother lent her $5,000.00 to buy such items as she would need or require incident to her relocating herself. The plaintiff testified that the value of the items that she took at the time that she vacated amounted to $2,830.00.
The plaintiff described the former joint marital residence in detail and the plaintiff valued the items left by her at the time that she vacated at $21,590.00. Among the items that the plaintiff took when she left was the piano.
As noted, the plaintiff has incurred a debt to her parent-mother in the amount of $5,000.00. She has been paying her parent-mother on a periodic modest basis.
At the time that the plaintiff left, two computers were left at the home. The plaintiff now has an apartment of four rooms; two of the rooms are bedrooms.
The former minor child Jennifer Lynn is now at college at Three Rivers and has part-time employment. It was testified that the child has some CT Page 6591 weight problems but of course issues as to custody and support are not before the court with regard to this particular petition.
The testimony indicated that the minor child now has a motor vehicle to use for herself
The monthly rent for the apartment that the plaintiff occupies is $825.00.
The defendant's departure from Northeast Utilities occurred in 1994. Again, as earlier noted, apparently due to attrition.
At the time of his severance from Northeast Utilities, the defendant did receive a severance sum which was predicated on one year of his former compensation.
Apparently because of emotional overtones, the defendant did follow the plaintiff during the pendency of these proceedings and apparently also listened on conversations between the plaintiff and others.
The defendant, for a considerable period of time, has been involved in politics in the Town of Waterford and was so involved during the 13 month layoff period. The defendant is now employed by the State of Connecticut as an engineer.
For a considerable period of time there was a severe lack of communication between the plaintiff and the defendant verbally.
In addition to his bachelor's degree in engineering, the defendant subsequently secured a master's degree in business administration by virtue of going to school at night. The same being secured from Rensselaer Polytechnic Institute.
At one point in time the plaintiff and the defendant joined in marriage counseling which extended for a period of one year.
During the marriage of the parties, the plaintiff and the defendant endeavored to have a child of their own. Various procedures were resorted to, which the court need not detail, which apparently were futile, and according to the plaintiff, in some instances, painful.
The plaintiff continued on her own with regard to marital counseling even after the defendant had ceased doing so.
In 1992 the plaintiff sought the assistance of a therapist. The plaintiff endeavored to secure certain material which she hoped would be CT Page 6592 helpful in certain intimate matters between the parties but apparently to no avail.
The plaintiff secured her bachelor's degree in 1995 at Mitchell College and then at Post College and then the University of New Haven. The securing of this degree took the plaintiff an extended period of time. Initially, according to the plaintiff, the defendant was supportive of her educational endeavors. Later, her testimony was to the effect that, the defendant derogated her accomplishments and that there was some verbally harsh words between the parties.
It appears clear however that the cost and expenses for the plaintiff's educational activities resulting in her securing the degree were in fact paid for from the household budget, which in the main was provided by the defendant.
The plaintiff offered the testimony of the witness Elizabeth Licara of Waterford. This lady is acquainted with the plaintiff and has known her for approximately 23 years. They met through club associations, Junior Women's functions and matters of like nature. This witness is acquainted with the defendant and has visited in the Zysk home. The witness recounted an incident whereby the defendant allegedly replied in vulgar language as concerns certain requests that were made of him at that time and this witness verified that on occasion the defendant had followed the plaintiff. This may be in part what prompted the application for the restraining order which in due course was granted.
The defendant, in his testimony, denied taping any phone conversations of the plaintiff however, it was noted that a recording device was found under the plaintiff's bed.
The plaintiff testified that in the beginning years of the marriage that there were some occasions of pushing and shoving and that during the entire length of the marriage, which as indicated is 30 years plus, that she had been struck twice during that time in the head.
There was lengthy considerable testimony with regard to the plaintiff's claim that the defendant wrongfully accused her of having an affair outside the marriage with one of her teachers and there was testimony with regard to the plaintiff's meeting the individual at a coffee shop. The plaintiff claimed that there were a number of, in her words, "unjustified" accusations as to improper conduct which the plaintiff claimed was not justified.
There were problems also in the marriage between the defendant and the plaintiff's family. This continued for an appreciable period during the CT Page 6593 length of the marriage. The testimony was to the effect that the then minor daughter Jennifer had a good relationship with the plaintiff's family.
As noted, the defendant was involved in local politics including local financial matters at town meetings. The plaintiff, however, was not involved in like conduct.
The problems developed apparently early in the marriage. The plaintiff described the defendant as anti-social and the plaintiff consulted with counsel at a much earlier point in time then the initiation of the present complaint but never pressed those earlier considerations to a conclusion.
The plaintiff described the defendant as a controlling person and claimed that the defendant wanted the plaintiff to be provocative in her attire and conduct.
On her part, the plaintiff complained as concerns certain alleged conduct of the defendant, particularly an occasion where the defendant stayed at the Hartford Sheraton. Subsequent testimony indicated the circumstances surrounding that visit.
One of the plaintiff's laments was to the effect that the defendant left exposed for her to see certain sexually suggestive material.
A number of years ago, incident to the settlement of an automobile accident involving the defendant, he received a modest settlement somewhere between $11,000.00 and $13,000.00.
The plaintiff claimed that on occasions when the then minor daughter Jennifer was with the defendant that when the plaintiff would call to speak with the daughter that the defendant would hang up on her.
At some point, the defendant's mother established an account with certain brokers for the benefit of the minor child Jennifer.
The plaintiff testified that she now works 40 hours a week. She recently filed her Year 2000 income tax return individually.
The current alimony order as noted is $160.00 a week. The plaintiff feels that her present job and employment position is secure.
The plaintiff acknowledged that during the marriage that the defendant had given her various gifts of jewelry. CT Page 6594
Insofar as her request with regard to personalty are concerned, the plaintiff indicated that her only request was for the return of certain luggage and a certain rug described as a latchhook type.
The plaintiff indicated that she made no claim for any gifts that she had given to the defendant.
The alimony payments presently going to the plaintiff are pursuant to a wage garnishment.
The plaintiff requested that the outstanding restraining order be continued even after the dissolution of the marriage.
On cross examination the plaintiff acknowledged that she was not happy about living in Connecticut. She would have preferred living in New York City.
The plaintiff noted that there were financial problems including her claim that the defendant canceled joint credit cards and that those that had formerly been valid were no longer valid.
The plaintiff acknowledged that during the layoff period of 13 months involving the defendant that he made all of the mortgage payments during that time frame.
The plaintiff indicated that she has paid nothing on the home or any indebtednesses or mortgages thereon since the separation.
The plaintiff since leaving the residence has only viewed the same from the outside.
Since 1995 the principal means of communication between the plaintiff and the defendant have been written notes back and forth.
As indicated, the plaintiff acknowledged that her educational expenses were paid for out of the household account.
It appears that the defendant has never been charged or arrested with the offense of stalking or any physical conduct as concerns the then minor daughter Jennifer insofar as striking her is concerned.
The plaintiff acknowledged a meeting with one of her instructors of a social nature.
The plaintiff, initially in 1995, consulted counsel incident to a prospective dissolution. In fact, the plaintiff consulted with four CT Page 6595 different law firms incident to considering that course of conduct at that time.
The witness Joan Canamella was offered by the plaintiff. This witness is employed at the Clark Lane Middle School in Waterford and indicated that there was an occasion when she made a report after observing the defendant strike the then minor child Jennifer as he drove away from the school with the child a passenger in the vehicle.
The testimony was to the effect that the Division of Children and Family Services investigated the matter but that the file was closed without action.
Incident to her present position, the plaintiff has secured two raises in compensation recently. The plaintiff claimed some isolation from friends or acquaintances. The exact cause for which was not defined.
The plaintiff admitted conduct on her part whereby she would call the defendant and then hang up.
Payments for the alimony obligation at one point in time was sent by certified mail from the defendant to the plaintiff.
The plaintiff admitted that the defendant paid for her educational attainments.
The plaintiff acknowledged that during the life of the marriage and at least from and after the date of the adoption of the child Jennifer that the defendant paid 80 to 90% of all the child's expenses during that time frame.
The plaintiff admitted that on occasion that the defendant would adjust his schedule of employment so as to have time to attend to the needs of the child including medical appointments. The plaintiff acknowledged that the defendant is and was a good father and loved the child.
During the course of the marriage the defendant took the plaintiff on various trips including trips to the Caribbean, Hawaii, Puerto Rico, Bermuda, Florida, Newport and to the Catskills.
The plaintiff acknowledged that the defendant, in her words, has a heart.
The plaintiff admitted that the defendant helped her family.
During the appropriate time frames, the defendant transported the child to school every morning. CT Page 6596
It was the defendant's claim that the plaintiff was involved with several different individuals.
The plaintiff acknowledged that she maintained a separate post office box for over five years. The plaintiff claimed that the reason for this was that she wasn't getting all of her mail.
The plaintiff testified that the persons with whom she was identified as having friendships were people that she had known for many years.
At one point the plaintiff consulted with a Dr. Pathos.
During the marriage the plaintiff and the defendant each and together celebrated their respective religious holidays.
From the testimony of the witness James B. Blair, the court finds that he is a real estate appraiser and has been such for 27 years certified with the State of Connecticut. He appraised the premises known as 40 Twin Lake Drive, that he visited on July 7, 1999, December 16, 2000 and one week ago from the date of the hearing and valued the same at $227,500.00. In July of 1999 he had valued the same property at $200,000.00. Blair indicated that the increase in the value was attributable to the employment climate involving Pfizer's.
Certain claimed defects as to the residence which really appear inconsequential are noted in the appraisal which was submitted to the court.
In terms of describing herself, the plaintiff testified that she is 5'2" in height, weighs 130 lbs.
In attaining her quest for a degree, the plaintiff's educational pursuits extended over a period of nine years.
The plaintiff indicated that there were many occasions when she would go to New York to visit her family and that there were no problems with the defendant in that respect.
Recently before the child attained her majority, the child received a civic award for work in music and volunteer work for the handicapped.
In response to questions put to the plaintiff by the court, the plaintiff testified that during the 30 years of marriage there were only the two noted events with regard to any physical violence or semblance thereof. CT Page 6597
The plaintiff indicated that there were no problems with regard to the immoderate use of alcohol, that there were no problems with regard to substance abuse.
From the testimony of the defendant, the court finds that the defendant's date of birth is July 30, 1948. He is age 53. He has a bachelor's degree in electrical engineering and a master's degree secured in 1983. He was employed for a considerable period of time by Northeast Utilities. 75 to 80% of the cost of the defendant's educational pursuits were provided by his then employer at Northeast Utilities.
The defendant's present employment is with the State of Connecticut as an engineer in the Department of Public Works as a manager. This work entails hiring contractors, reviewing building codes. Design and construction work is under his direction and has been since 1994.
The defendant has a much greater responsibility now then in his former position. The defendant testified with regard to the early years of the marriage and the necessity to relocate frequently.
The defendant indicated that he was not aware of the plaintiff's resort to her parent-mother for financial assistance.
The defendant also consulted with Dr. Pathos for job-related stress and apparently the defendant's perception of relationship by the plaintiff with others, justified or not, caused him concern and upset.
According to the defendant's testimony, there is now a custodial account in his charge initially established by the defendant's mother or with proceeds from her in the amount of $50,000.00. This, according to the testimony, for the purpose of educating the then minor child Jennifer.
There are at the present time apparently two custodial accounts. One in the amount of $57,994.23 and another of $32,158.06 where the defendant is custodian for the child and one for the benefit of defendant's mother. The account for the child is for educational purposes and will eventually belong to the child.
As to the aforementioned accounts, the defendant is the custodian thereof.
In his testimony the defendant acknowledged that he had hired a detective to follow the plaintiff on occasion and to record or make note of her conversations. CT Page 6598
The defendant was concerned with regard to the plaintiff's relationship with a college instructor.
It was the defendant's testimony that based on the inferred, at least in his mind, conduct of his spouse that it caused him considerable upset and anguish.
The defendant's interest in the State of Connecticut retirement plan apparently at this juncture is vested.
The plaintiff is covered on the defendant's medical coverage incident to his employment. The defendant noted that on occasion he has done outside consulting work. The last such type of work was done two years ago and his hourly rate for that type of assistance is $38.00 an hour.
The defendant offered the testimony of the witness Luanne DeMatto. This witness testified that she has known the defendant for about six or eight years; in any event, from 1994 on through political association in the Town of Waterford. The witness terminated her political activities, according to her testimony, two years ago.
This witness was acquainted with the child Jennifer. This witness' contacts with the defendant would be incident to attendance at committee meetings and at political fundraisers. The witness' observations were to the effect that on occasion the defendant would bring his daughter with him and that the observed relationship was that of a normal father-daughter arrangement. The child apparently enjoyed activities at these political events and the witness characterized the relationship between the defendant and the child as a healthy one.
The witness denied that there were any inappropriate or romantic relationship between the defendant and herself, acknowledged visiting the defendant at a hospital incident to his being involved in an accident. This witness indicated that she never observed any improper conduct on the defendant's part at any time.
The defendant called as a witness Kathleen McCarty. This witness testified that she was acquainted with the defendant incident to membership on the Waterford Town Committee for a period of over four years and town and school functions.
The witness testified that the defendant was an adviser to the witness when she ran for a State legislative post and would see the defendant on a frequent basis incident to Town Committee matters. This witness was a former member of the Board of Education in the Town of Waterford. CT Page 6599
The witness was familiar with the child Jennifer. The witness testified as to the child receiving an award at the high school graduation in June of 1999. The child also participated in other activities leading to the child receiving a learning service award from the town. The witness indicated that there was a good relationship between the defendant and the child.
The witness indicated that there was absolutely no romantic or sexual relationship with the defendant. Insofar as the occasion where the defendant stayed overnight in Hartford at a hotel, the witness testified that this was incident to a convention that the defendant had his own quarters, paid for the same. It was a similar situation as to the witness.
The witness characterized the defendant as a perfect gentleman.
This witness attended an awards dinner at Ocean Beach in New London as concerns the then minor child Jennifer.
From the testimony of the witness Anthony Gigliotti offered by the defendant, this witness was acquainted with the defendant through politics over a period of 20 years. He has worked on various projects with the defendant.
During the years 1989 through 1991 this witness was First Selectman of the Town of Waterford.
This witness had occasion to meet with the defendant frequently and was acquainted with the then minor child Jennifer.
This witness indicated that the relationship between the defendant and the child was excellent, that the defendant was president of the so-called Booster's Club.
The witness characterized the defendant's conduct at all times as being above reproach, never observed anything of an improper, offensive or immoral nature.
The defendant testified with regard to the reasons motivating the various and sundry moves of the parties in the early part of the marriage and the relative stability from and after 1982.
The defendant characterized the relationship of the parties as being mobile and upward oriented. CT Page 6600
The defendant indicated that in his opinion the parties lived well and enjoyed vacations.
He acknowledged that there were some minor differences as concerns the religious faith of each of the parties.
The defendant indicated that the parties had hoped for children of their own and had endeavored in that respect over a period of three years to achieve that purpose.
The defendant indicated that he had initially hoped for a full-time, lifetime career with United Technologies but that did not work out.
The defendant touched on medical difficulties which apparently beset the parties with regard to having a family of their own and the adoption of the then minor child Jennifer was achieved in 1983.
The defendant's testimony was to the effect that he was at all times supportive of the plaintiff's religious preferences; that as between themselves they discussed their respective job prospects and educational attainments.
The defendant characterized the plaintiff's efforts with regard to furthering her education as being diligent and while the plaintiff was engaged in such endeavors, the defendant testified that he did grocery shopping and performed household chores and maintenance.
The defendant indicated he has always been actively involved in the then minor child's life. On frequent occasion he would take the child to school.
As noted, the plaintiff secured her degree in graduating from an institution of higher learning in 1995. On that occasion the defendant provided a graduation party for the plaintiff.
The defendant acknowledged that the relationship with the plaintiff's family on occasion was strained and he spoke of his starting counseling with Dr. Pathos in the late 1980's.
The defendant testified as to the advice and comments that Dr. Pathos had suggested to him with regard to the elimination of tensions, job stress and other problems.
The defendant indicated that he has had an abiding love and affection at all times for the plaintiff and the child. CT Page 6601
The defendant affirmed his support financially in helping the plaintiff to attain her present educational status.
The defendant denied that he ever insisted upon the plaintiff appearing in any particular attire or immodest dress.
The defendant's testimony was to the effect that the problems between the parties worsened toward the end of the plaintiff's education in the area of 1995.
During the last year that the plaintiff was engaged in her educational activities the defendant apparently with or without justification suspected inappropriate conduct on the part of the plaintiff but concrete evidence sustaining that position was absent.
The defendant testified as to hearing the plaintiff speak on the phone with one of her instructors and felt that the conversation was inappropriate and suggestive.
The defendant endeavored to discuss the plaintiff's relationships with outside friends or acquaintances but to no avail.
The defendant testified that he was devastated by virtue of his perception of the plaintiff's conduct outside the home.
The defendant testified that he has a hearing impediment.
The defendant verified the circumstances incident to which he was laid off from United Technologies in 1993 and the nature of the severance package which he received at that time.
The defendant indicated that the plaintiff was free at all times to use whatever her income was as she saw fit and felt at least in his view that he was, in his words, used as a meal ticket in the marriage.
The defendant filed for a reconciliation but the same was not successful. There was testimony with regard to the type of automobile preferred by the defendant but the reason for that appears to be the defendant's feeling that the design of the car as concerns an accident he was involved in a number of years ago was such that it saved his life and he was always thereafter partial to that particular make.
The parties have been separated in this matter since January 24, 1999.
It is the defendant's posture that the plaintiff is not utilizing the education that she has been able to secure to its full potential and that CT Page 6602 the position that she has held for some time with her present employer is something much less than what she would be able to secure if she were actively to address the employment market mindful of her present credentials.
The defendant acknowledged that at one point during the marriage he also maintained a separate post office box.
As concerns the afore noted accounts earlier touched on, the defendant characterized the account amounting to $32,158.00 as an estate planning tool and the $57,994.23 as a trust or account, specifically for educational purposes for the child Jennifer and to advance her education in all respects.
The defendant is age 52, is on a variety of medications, takes a water pill, he has high blood pressure and takes Zoloff for depression.
In the defendant's view, the plaintiff's conduct apparently caused him considerable emotional upheaval and distress; whether or not his reaction to the circumstances was justified is in part a matter of conjecture.
The defendant felt that the plaintiff was inflexible with regard to being willing to commit to any change in the relationship between the parties.
From the following exhibits the court then notes or finds as follows: the court has considered those aspects of Defendant's Exhibit A as noted in the deposition of Barbara M. Zysk dated February 4, 2000 as may be appropriate mindful of the testimony elicited and in that respect also Defendant's Exhibit B.
The court has examined and studied a wide variety of exhibits offered by the defendant as concerns the notes and writings that were exchanged back and forth between the parties with regard to financial and other matters including Defendant's Exhibit C, Defendant's Exhibit D, Defendant's Exhibit E, Defendant's Exhibit F, Defendant's Exhibit G whereby the plaintiff asked for a reimbursement for the purchase of shoes for the then minor daughter.
Exhibit H having to do with telephone bills and dance expenses for the child.
Defendant's Exhibit J, a writing by the defendant indicating his activities and involvement with regard to the plaintiff and the child.
Defendant's Exhibit L, Defendant's Exhibit N, Defendant's Exhibit O and CT Page 6603 Defendant's Exhibit P.
Defendant's Exhibit Q, a writing by the defendant to the plaintiff in which he indicates among other things that he is trying to do his best, that he professes to love the plaintiff and the child, that he admires the plaintiff and her achievements, that he acknowledges that on occasion he feels insecure and that he needs the reassurance and affection of the plaintiff and seeks for her help and indicates that he is afraid of her criticism.
Defendant's Exhibit R, the defendant's letter of resignation from the Waterford Town Committee indicating that he is desirous of spending more time with the plaintiff and his daughter.
Defendant's Exhibit 5, a promissory note in favor of the defendant's parent from the defendant in the amount of $15,000.00.
Defendant's Exhibit T, the loan agreement incident thereto.
Defendant's Exhibit U, the Mortgage Service Center.
Defendant's Exhibit V, activity statement from the Mortgage Service Center.
Defendant's Exhibit W, statement of earnings and deductions from the Office of the State Comptroller for the State of Connecticut as concerns the employee Robert P. Zysk.
The court has also considered Plaintiff's Exhibit 1, statement from the State of Connecticut, the employer of the defendant and showing his earnings incident thereto.
Plaintiffs Exhibit 2 is another statement from the State of Connecticut as concerns the financial circumstances of the defendant.
Plaintiffs Exhibit 1 is her financial affidavit which the court will treat at some length further on in the memorandum.
Plaintiffs Exhibit 6 is a collection of 42 colored photographs showing the interior of the former joint marital home and the contents thereof. The same appear to reflect a fairly gracious, tastefully furnished interior. Each room appearing neat and pleasantly decorated. The photographs also include pictures of computers and printers, appliances and matters of like nature and their content would suggest that the home was lovingly and tastefully furnished. CT Page 6604
Plaintiffs Exhibit 4, a series of seven sheets from Salomon-Smith Barney entitled "Individual Retirement Account" as concerns the defendant Robert P. Zysk indicating account value, earnings summary and matters of like nature.,
Plaintiffs Exhibit 45 and 46 are pages from the deposition that were formerly taken of the plaintiff and have to do with objections by counsel as concerns certain requested information.
Plaintiffs Exhibit 44 is a document entitled "Robert P. Zysk Trust Agreement" dated March 19, 1996 incident to the terms and provisions of that agreement, it would appear that the then minor daughter Jennifer Lynn Zysk was the principal beneficiary, reference being made to page 4 (a) of that instrument. In addition, if the then minor child shall not have attained the age of 30 years, the trustee is to retain the trust estate and trust for the benefit of the child. The Trust Agreement is apparently funded by virtue of an Aetna Life and Casualty Life policy and SMA Life Assurance Company contract and the State of Connecticut Retirement System Tier Plan.
Plaintiffs Exhibit 42 entitled "Preferred Client Statement" as concerns an account Robert P. Zysk ACF, Jennifer L. Zysk, UCTAIUGMA. This runs from the period of January 1, 1999 through January 28, 2001 and contains countless pages treating financial data.
Plaintiffs Exhibit 40, the defendant's income tax return for the year 1999. In that return the defendant received wages, etc., amounting to $59,191.00. The adjusted gross income on said return was $55,324.00.
Plaintiffs Exhibit 38 concerned itself with copies of checks issued by the plaintiff for camp expenses for the then minor child, the University of New Haven Bookstore and allied matters.
Plaintiffs Exhibit 27 is correspondence between a Hartford law firm and the defendant with regard to apparently some outside work that the defendant was doing. These documents are dated June and August 1997 and indicate a billing by the defendant to the subject law firm; one in the amount of $420.00 and the other in the amount of $595.00.
Plaintiffs Exhibit 36 is a document entitled "Receipt for Premiums and Advance of Current Year" concerning the defendant and his being a member of Lodge 237 for the Polish National Alliance. This goes back in terms of a time frame to 1955.
Plaintiffs Exhibit 25, material and information from TransAmerica Occidental Life as concerns the insured Robert P. Zysk indicating as of CT Page 6605 April 8, 1997 insurance on the defendant's life apparently in the face amount of $200,000.00.
Plaintiffs Exhibit 34, a document entitled "Open End Credit Plan Agreement" with Dutch Point Credit Union. The borrower's name is Robert P. Zysk, the defendant and has to do with life insurance. Attached to this exhibit is a document entitled "Loan Agreement" by and between Wanda Zysk, parent-mother of the defendant, indicating that the parent loaned the defendant $3,000.00 for attorney's fees.
Plaintiffs Exhibit 33, a document entitled "Department of Public Works, State of Connecticut in Hartford" as concerns then outstanding medical and dental benefits as an active employee available to the defendant.
Plaintiffs Exhibit 32, a letter from the State of Connecticut Retirement and Benefit Services Division directed to the attorney for the plaintiff in which the letter it is indicated "if Mr. Zysk terminated state service today", the letter being dated December 19, 2000, "with six years of credited service and an average salary of $60,700.00 for his three highest paid years of State service, his basic yearly retirement benefit would be approximately $5,700.00 payable at $475.00 monthly."
Plaintiffs Exhibit 31, a letter from Northeast Utilities directed to the plaintiff's attorney in which communication is stated "Robert P. Zysk is a vested member of the Northeast Utilities Service Company Retirement Plan. For retirement at age 65 his accrued monthly benefit would be $1,995.09. If he elected early retirement, he could begin receiving a reduced benefit at age 55." The letter goes on to say Mr. Zysk no longer has an account balance under the NUSCO 401K plan. This communication was dated March 30, 1999.
Plaintiffs Exhibit 30, a document entitled "Your Retirement Account Statement All America Invests, Inc., Statement Period January 30, 1999" and subsequent dates indicating asset valuation activity summary.
The first two pages of Plaintiffs Exhibit 29 have no identifying name on the same. The third page bears the name of the defendant and indicates it's an AT T Universal Card statement indicating a balance due of $6,136.26 as of March 2, 2001.
Plaintiffs Exhibit 27 are the defendant's federal income tax returns for 1996, 1997 and 1998 with accompanying copies of the State returns. In 1996 the defendant's total income was $47,084.00; in 1997, $52,732.00; and in 1998, $59,276.00. CT Page 6606
Plaintiffs Exhibit 26, a statement from the State of Connecticut Office the State Comptroller dated December 12, 2000 directed to the attorney for the plaintiff. The same contains a lengthy detailed earnings history report as concerns the defendant.
Plaintiffs Exhibit 24 is a withholding order for support issued by this court, Mihalakos, J., under date of August 2, 1999 providing for the wage garnishment of the outstanding order of support then in effect in the amount of $225.00.
Plaintiffs Exhibit 22 is a statement from Liberty Bank directed to the plaintiff and the defendant having to do with a certain very modest savings account; the balance of which appears to be, at that time, 6/5/96 of $104.67. The account was subsequently closed.
Plaintiffs Exhibit 21, statement from the Sheraton in Hartford as concerns the plaintiff's claim with regard to the defendant residing there on July 24, 1998 with a calendar attached thereto.
Plaintiffs Exhibit 20, Application for Relief from Abuse filed by the plaintiff on January 16, 1999 making certain claims in the statement and conditions from which she seeks relief as concerns the conduct of the defendant. The court judicially notices the content of the application. It apparently remains in full force and effect at this time.
Plaintiffs Exhibit 19, further notes and communications between the plaintiff and the defendant pertaining to the then minor child and her needs.
Plaintiffs Exhibit 18, a photograph stapled to a sheet of paper which photograph reflects certain printed material or magazines or paper bound books; one entitled "Men's Health, The Sex Dreams," and a further publication called "What She Wants". The contents of this exhibit, the plaintiff claims, the photograph was taken by her and the claim was to the effect that it was left in a conspicuous place for her observation. The testimony in that respect was contradicted by the defendant and was at issue.
Plaintiffs Exhibit 17, Three Rivers Community College student schedule bill as concerns the then minor child indicating that the total current term charges were $963.00 as of the date of that statement, September 4, 2000.
Plaintiffs Exhibit 15, further Salomon-Smith Barney document and data sheets entitled "Preferred Client Statement" reflecting the account held for the benefit of the minor child. The account is entitled "Robert P. CT Page 6607 Zysk ACF Jennifer Zysk UCTTUGMA". This exhibit covered the period September 28, 1998 through December 31, 1998.
Plaintiffs Exhibit 13 are photocopies of certain checks that have already been touched upon whereby the plaintiff paid certain camp charges and costs as concerns the then minor child Jennifer and educational expenses at UNH and the UNH Bookstore.
Plaintiffs Exhibit 12, a detailed lengthy appraisal of premises known as 40 Twin Lakes Drive in Waterford, Connecticut which appraisal was done by James B. Blair, a certified and licensed appraiser by virtue of stipulation of counsel at the time of the proceedings. This appraisal is detailed. It contains photographs and a host of allied data including tax data, assessment data, inspection of the premises, comparables, pictures-front/rear, location and so forth and the appraiser comes to the conclusion that the present fair market value of the property is $227,500.00.
Plaintiffs Exhibit 11, a document entitled "HPP-89 Quarterly Report Boston Bay Capital" as concerns historic preservation properties 1989 Ltd. partnership.
Plaintiffs Exhibit 10, warranty deed of Lamco Homes to Robert P. Zysk and Barbara M. Zysk, dated July 26, 1982 and recorded in the Waterford Land Records, Volume 265, page 1041. The exhibit includes a copy of the mortgage note and deed to the then lender which is to the amount of $120,000.00 in the form of a first mortgage.
Plaintiffs Exhibit 9, a home owner's policy, Middlesex Mutual Assurance, for the period of July 1996 through July 1997. At that time the residence and contents were insured to a value of $306,000.00.
Plaintiffs Exhibit 8, a check drawn by the plaintiff payable to SaveRite in the amount of $129.59.
Plaintiffs Exhibit 7, a lengthy detailed statement prepared by the plaintiff as concerns items that she purchased to set up her apartment at 67 Stoneheights Drive in Waterford, items from the house at 40 Twin Lakes Drive in Waterford that she has at her apartment and items that she left at the residence. The list is 18 pages long and recites in minutiae the items, furnishings and personalty as concerns the aforementioned residences.
Plaintiffs Exhibit 4 is a promissory note from the plaintiff to her mother Sylvia Petchenik in the amount of $5,000.00. CT Page 6608
Plaintiffs Exhibit 3 are documents from People's Bank, Traveler's Life — an annuity, Putnam Investments and Financial Planning Services, American Express as concerns accounts of the plaintiff held by those institutions.
Plaintiffs Exhibit 2 is a copy of the plaintiff's federal income tax return for the year 2000 showing her adjusted gross income as being $31,467.00. A copy of the State of Connecticut income tax return is also appended thereto for the year 2000.
In arriving at line 33 on the federal return, the court notes that a portion of the adjusted gross income; to wit, $6,880.00 was designated as alimony received. Appropriate W-2's accompanied the face of the exhibit. This exhibit includes an amended U.S. individual income tax return for 1996 as concerns the plaintiff showing her then income as being $20,750.00. This exhibit also includes a copy of the plaintiff's 1996 federal income tax return prior to amendment showing adjusted gross income of $22,919.00. This exhibit includes copy of the plaintiff's 1997 federal income tax return showing her adjusted gross income for that year at $22,742.00 and in the same exhibit for the plaintiff federal income tax return for 1998 showing her adjusted gross income on that return of $22,381.00. The exhibit also included a copy of the plaintiff's 1999 federal income tax return showing her adjusted gross income for that year at $26,172.00.
The financial affidavit filed by the plaintiff petitioner with the court reflects the following. Her occupation is listed as billing associate at the Stonington Institute located in North Stonington, Connecticut. Her gross weekly wage from that employment is $520.00. Deductions as follows: Social Security, $38.82; SWT, $14.28; federal withholding tax, $99.55: medical, $16.51; dental, $1.57; 401K, $26.00; total deductions, $196.73 for a net weekly wage of $323.27.
The plaintiff claims her total weekly expenses amount to $629.84. This figure represents the sum of rent and mortgage, utilities, food, clothing, transportation costs, insurance, and reflects also expenses incurred or undertaken on behalf of the former minor child.
The plaintiff shows three debts. The first incurred incident to establishing the apartment she now occupies which was a loan from her family, attorney's fees from family and attorney's fees exclusive at trial; total $20,000.00.
On the bottom of the front page of the plaintiff's financial affidavit appears an asterisk and thereafter the words "husband pays temporary alimony". The amount is not reflected on the face of her affidavit. CT Page 6609
On the reverse side, property at 40 Twin Lakes Drive in Waterford, the plaintiff values at $227,000.00; mortgage, $65,568.00; one-half of the equity shown as $80,715.00; motor vehicle, a 1999 Honda Accord leased; jewelry valued at $10,000.00; various household goods shown on exhibits, $10,000.00; Liberty Bank, $989.74; tax shelter historical property, $5,000.00; People's Bank CD, $1,170.00; life insurance with the plaintiff being the named insured showing a cash value of $4,257.00; an American Express IRA, $18,349.00; 401K, $2,845.00; Putnam IRA, $1,370.00; total cash value of all assets, $124,695.74.
From the health form, the court notes that this was the first marital union for both parties.
The educational attainments are shown in the appropriate column on the health form and have been touched on in an earlier part of the memorandum.
From the financial affidavit presented to the court by the defendant; occupation, engineer; employer, State of Connecticut, Department of Public Works; gross weekly wage from principal employment, $1,279.00; deductions, federal withholding, $255.92; FICA, $95.87; State withholding, $53.50; disability insurance, $24.50; union, $5.00; total deductions, $434.79 for a weekly net of $844.21.
Total weekly expenses which includes the mortgage, utilities, food, clothing, transportation, medical, dental and matters of like nature for a total of $969.76.
Debt: Dutch Point Credit Union, $7,600.00; GM Card, $9,190.00; Wanda Zysk-parent, $18,500.00; Sears Mastercard, $7,460.00; AT T Universal Card, $6,140.00; total debt, $48,890.00.
On the reverse side thereof, 40 Twin Lakes Drive, Waterford valued by the defendant at $173,500.00; mortgage, $66,000.00; total equity of $107,500.00; no automobiles are shown; household furnishings valued at $2,500.00; jewelry at $500.00; Dutch Point Credit Union savings, $1,000.00; Dutch Point Credit Union checking, $500.00; savings bonds, $130.00; no value to life insurance; IRA-All America, $74,705.00; IRA-Salomon Smith Barney, $35,810.00; total cash value as it appears on the affidavit, $221,645.00.
 The Law
The court has considered all of the statutes which apply in matters of this nature which would include without limitation the following: CT Page 6610 Connecticut General Statutes (C.G.S.) §§ 46b-81, 46b-82, 46b-66a and46b-62.
The court has considered all of the applicable case law that govern the matter.
The court has considered the testimony of the parties, their candor or lack thereof, and all exhibits and the arguments of counsel.
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation and employability of each of the parties and the estate and needs of the parties and the educational status of each of the parties and their ability to realistically and economically sustain themselves.
The court has considered the standards of living of the parties.
The court has considered the respective financial positions of the plaintiff and the defendant and their prospects for future income and opportunities.
 Discussion
This is a marriage of exactly 30 years duration.
It is the first marriage for both parties.
There was one child adopted by the parties many years ago. The child, not being a minor, there is no issue as to child support in this proceeding. The child presently attends Three Rivers College incident to furthering her education.
The plaintiff represents that insofar as health considerations are concerned that she is, her words, "exhausted". Personal observations of the plaintiff during the three days of the trial indicated that she appeared reasonably well.
The parties were married admittedly at an early age.
In terms of education, the plaintiff now has a bachelor's degree which she has secured through her persistent, diligent efforts and to her credit.
The defendant has both a bachelor's degree and a master's degree. CT Page 6611
As noted, the plaintiff and the defendant were of different religious inclinations.
The defendant is age 53; the plaintiff age 52.
The plaintiff is presently employed as a billing associate at the Stonington Institute and presumably mindful of her education, one might reasonably expect that she can materially improve her employment situation by virtue of her education and secure greater earnings as a result thereof.
The defendant is presently employed by the State of Connecticut.
The actions by the defendant, mindful of the fact that this is a marriage of 30 years are perhaps understandable as concerns his mental turmoil he being inclined to the view that the plaintiff had interests outside the home, but of course that has not been clearly demonstrated nor established.
It appears that a wall of silence existed between the parties for a long period of time.
Both of the parties resorted to counseling. Apparently during this exceptionally long marriage there were some instances of verbal harsh words spoken.
Again, in the context of 30 years, there were apparently at least two occasions where the defendant slapped or hit the plaintiff.
The defendant appears to have been genuinely distraught with regard to the marriage coming to an end after 30 years and some of the exhibits demonstrated his stated affection for the plaintiff and the child and his concerns as to the deterioration of the marriage.
The defendant has no criminal record of any kind based on the evidence presented in this proceeding.
The record indicates that the defendant and the plaintiff at an earlier point in their marriage enjoyed considerable travel, including travel abroad to different countries.
It is quite clear that the defendant in effect did pay for and was responsible for whatever educational costs were incurred by the plaintiff in attaining her present situation.
There were apparently no problems pertaining to the immoderate use of CT Page 6612 alcohol.
There were no problems with regard to drugs or controlled substances.
Both of the parties appear to have a genuine affection and love for the daughter Jennifer.
On the basis of the credible testimony presented to the court, it would appear that the defendant has not engaged in any indiscretions outside of the confines of the marriage.
The court wonders whether the plaintiff was fully appreciative of the effect that her conduct had on the defendant with her teachers or instructors no matter how innocent.
Mindful again of the context of 30 years, the defendant's reaction or conduct was in some measure it appears motivated by the imminent destruction of the marriage.
The defendant has some medical problems as noted in the body of this memorandum.
The plaintiff's financial affidavit reflects some minor expenses attributable to the daughter Jennifer, now an adult, as does the defendant's.
As noted the plaintiff's financial affidavit does not disclose the $160.00 weekly in effect pendente lite alimony payment which would change the difference between her net weekly income and her claimed weekly expenses.
The plaintiff's debts are to family or counsel.
The defendant's debts are to credit card companies and defendant's mother.
The defendant's debts are twice the plaintiff's.
The adult daughter Jennifer's educational cost seems well provided for.
Mindful of the length of the marriage it would appear that there was financial stability, well furnished, pleasant home, educational achievement and the successful raising of the daughter Jennifer, during its 30 years.
No marriage is perfect. To assign fault in the breakdown of this CT Page 6613 marriage would be a difficult undertaking.
A drifting apart and a lack of sensitivity for the needs of each other might more appropriately be ascribed as the cause for the breakdown.
The plaintiff has her own medical and dental health plan and coverage.
The court also notes that some of the exhibits may have been misnumbered or receive duplicate exhibit numbers. The court has relied on the completeness and accuracy of the respective financial affidavits.
The Court enters the following orders.
The court grants a dissolution of the marital union between the plaintiff and the defendant and declares each to be single and unmarried.
The plaintiff may have her maiden name of Salz restored to her.
The defendant shall pay as periodic alimony to the plaintiff wife the sum of $190.00 per week for a period of 12 years. The amount may be modifiable but not the term. This will carry the plaintiff to a point where she will be eligible for Social Security.
As concerns the real estate and the former marital home known as 40 Twin Lakes Drive, Waterford, Connecticut, the plaintiff wife shall quitclaim by a good and sufficient deed her interest in the marital home to the defendant and in consideration thereof shall receive the sum of $75,000.00 within a period of six months.
The defendant husband shall exert his best efforts to refinance the existing mortgage on the aforementioned real estate so as to remove the plaintiff from any liability thereunder and to hold her harmless in the event any demand should be made on her for payment.
The plaintiff may retain the 1999 Honda Accord, which is presently leased.
The plaintiff may retain her jewelry valued on her financial affidavit at $10,000.00.
The plaintiff shall have and receive any luggage presently in the possession of the defendant and the latchhook-type rug; the same to be delivered over to the plaintiff without delay.
The plaintiff may retain her American Express IRA valued at $18,349.00, her 401K valued at $2,845.00 and her Putnam IRA valued at CT Page 6614 $1,370.00.
The plaintiff wife shall transfer all her right, title and interest in the historic preservation investment to the defendant and in consideration thereof shall receive the sum of $2,500.00 within 120 days.
Each party may have and retain all items of personal property that presently exist in their respective possessions. Mindful of the contents of the 40 Twin Lakes Drive home and the photographic depictions of the contents thereof, the defendant husband shall pay the sum of $4,000.00. The same to be paid within 120 days from the date hereof.
The plaintiff may retain her People's Bank CD in the amount of $1,170.00.
The defendant may retain his IRA All America account and the IRA-Salomon Smith Barney account; however, from those accounts the defendant shall roll over or effectuate the transfer of the sum of $25,000.00 forthwith to the plaintiff or a qualified plan of her choosing.
The defendant husband shall transfer, assign or convey to the plaintiff wife one half (50%) of his monthly pension benefits from Northeast Utilities and the State of Connecticut, valued as of this date by way of a Qualified Domestic Relations Order (QDRO).
The court shall retain continuing jurisdiction over the execution and implementation of the QDRO.
The court shall retain jurisdiction to effectuate the entry of such order and if the Plan Administrator does not honor such order the court shall have the power to enter alternative orders to effectuate the intent herein.
The transfer shall be done in such manner as to avoid any tax liability on said transfer.
Each party shall retain any additional assets they presently have in their respective possessions including, on behalf of the plaintiff, her Liberty Bank checking account, the cash value of her Midland Life insurance policy and household goods and effects presently in her possession in her present dwelling.
Each party shall be responsible for the debts shown on their respective financial affidavits. CT Page 6615
The court enters no orders with regard to the plaintiff's claim for "out-of-pocket expenses" that she may incur for the benefit of the former minor child Jennifer, mindful of the fact that the child has attained her majority and in the hopes that each of the parties will do whatever their financial circumstances permit out of an abiding love and affection for the child
The defendant husband shall maintain his currently existing life insurance policies or policy on his life and he shall name the plaintiff as the beneficiary until such time as his financial obligations have been fulfilled and provide the plaintiff with such authorizations as may be necessary so that the continued existence of the policy or policies and the beneficiary designation may be verified.
As noted, the plaintiff has her own health insurance.
The court enters no orders with regard to attorney's fees. Each shall be responsible f their own.
Any outstanding restraining order as concerns the defendant may remain in effect until its orderly termination or its renewal.
Austin, JTR